Your Honor, good morning. Gary Burcham for Petitioner, Eric Marceleno. Mr. Marceleno has presented two separate juror misconduct issues to this Court. The first being that the jury foreperson gave false answers during voir dire to conceal a bias. The second being that the foreperson made an improper statement during deliberations to introduce extrinsic prior conviction evidence into the deliberations. I'll start with the first issue. The jury foreperson in the case was Patrick Cronin. He was a veteran police dispatcher with the Ventura Police Department. And during voir dire, not surprisingly, Mr. Cronin was asked by the parties whether he could be an impartial and unbiased juror in the case. He was asked in a written questionnaire the question as to whether he had any feelings about attorneys. And his answer to that question was he had no feelings either way. He was also asked during voir dire in court by the government and the defense counsel whether he would tend to lean towards the government in the case given his contacts with the police department. And he answered negatively to both questions. Basically, he told the court and the attorneys and Mr. Marcellino that he would be an unbiased and impartial juror. During deliberations, it was reported by another juror, Juror Stiles, who contacted the court or contacted the parties after the trial, that Mr. Cronin, the foreperson, actually had a very different opinion about defense attorneys and defendants than what he said during voir dire. Ms. Stiles reported that during deliberations, Mr. Cronin expressed a very strong general dislike for defense attorneys, that Mr. Cronin expressed dislike with respect to the tactics that are employed by defense attorneys, and that Juror Cronin also expressed basically a disbelief in the presumption of innocence that must attach to every case. Well, what? Where did he say that? What did he say exactly that would lead you to that? He did not say exactly those words, but I think when you take a reasonable approach and a reasonable ---- I mean, you said, well, look, the defense attorneys are just here to, you know, they know their defendants' duty. Maybe that's what ---- If he had limited his ---- That's what you're talking about. If he had limited his statement to the facts of the case and the tactics of the attorneys in that particular case, I think it would be much closer to meshing with his statements during voir dire. But the problem with the statements attributed to Juror Cronin, and again, these particular statements of Juror Stiles were not discounted by the state court, was that it was a general dislike of defense attorneys and a general dislike of the tactics that he believed defense attorneys employed in any given case. And so we don't simply have a situation where he heard the evidence in the case, he saw ---- What exactly did he say about ---- did she claim he said about lawyers? Let's look at the specific words. Are you looking at her letter now or her declaration? I am looking at the 46 to 56 of the E.R. I can read to the court exactly what she declared if the court would like. Another opinion that was expressed by the jury foreperson was his dislike ---- Where are you reading from? I'm reading from page 46 of the E.R. Is a Bates number on there? There's nothing on page 46. It's page 10 of my opening brief. And page 46 is a declaration of Felicia Stiles. It starts on actually page 47. Why did you say 47? That's the opening. That's the cover sheet for the declaration. Ask him where you were reading from. E.R. Where you were reading from. The actual page? Yes, where are you reading from? Page 53 of the E.R. Line? Paragraph 11, line 25. Okay, that's not so difficult, is it? No, sir. Okay. Go ahead. Another opinion that was expressed by the jury foreperson was his dislike for defense attorneys. He made comments that it was their job to protect guilty people and confuse the jury so that their client could go free. He made the accusation that the defense attorney actively and purposely tried to confuse the witnesses. Whenever another juror would point out a contradiction in the witness's testimony, the foreperson would say that the only reason that person changed their version of the evidence is because, in quotes, Mr. Lacks kept asking them questions in a confusing way that didn't make any sense. He also stated that the defense attorneys, in quotations, knew their clients were guilty and they were being paid to get them off. That was their job. Counsel, how is that inconsistent with his answer that he didn't have any feelings about attorneys either way going into the trial? And then he made comments about the particular tactics of the attorneys as he saw them during trial. How does that make the answer he gave prior to trial a lie? I think the important thing to note, as I stated earlier, is the distinction between a general dislike for defense attorneys and maybe a distaste for what happened in the particular trial. Again, I think if he had said during deliberations, I think that they were trying to confuse those witnesses because they gave damaging testimony against Mr. Marcellino. And, you know, it's a defense attorney's job in that situation to try to create some confusion with the witness or among the jury. And I think that would be closer to an allowable or closer to what he said prior to trial in the voir dire. But I think especially that the first line, as written by Juror Stiles, says that he expressed a strong dislike for defense attorneys in general. But that is the only thing you have is that first sentence. And that first sentence is quite general. Everything else is pretty specific, which he says. He says, you know, they're paid to confuse people. They know their clients are guilty. Those are quite specific things, but there's no quote in that first sentence. Best I can tell, it's sort of a summary of what is to follow, like a copy sentence. I think your Honor is correct. I would like to read one more quote, page 54 of the ER, line 25. According to the foreperson, the defense attorneys weren't representing their clients because of their innocence, but because it was their job to get a guilty person off. I think the first statement by Juror Stiles in her declaration sort of qualifies everything that follows, which was the statements by Mr. Cronin during deliberations were not specific case-related statements concerning only the evidence in this case and the conduct of the attorneys in this case. It was sort of a general impression he had about defense attorneys, which certainly would have affected his ability to be an unbiased and impartial juror. What, in your opinion, would be the Supreme Court case that the State court decision contradicted or unreasonably applied? The Supreme Court cases that I rely upon would be Duncan and McDonough. Those are the cases that say that a criminal defendant has an absolute right to be an impartial and unbiased jury, and we submit that the State court took the facts of this case improperly and unreasonably applied those to those two Supreme Court cases, which clearly established that that right does exist. Well, just disliking defense attorneys or attorneys in general doesn't make him a biased juror. What you want to claim is that he lied during Bois d'Ire. In what case do you have for the proposition that the misstatements during Bois d'Ire render a juror biased? Well, I didn't cite any specific case that says that. It's always a terrible thing to say in an FPAC case. I didn't find a specific case. Well, I think that the — Isn't our job to figure out whether there is a specific case and if there isn't a specific case? Well, if there is a specific case, obviously the 2254G1, the first problem, the clearly contrary to test might apply. But in this case, we have the Supreme Court saying on a couple of occasions that a defendant has an absolute right to an unbiased jury. And how we get or address the question of whether the jury is unbiased or impartial is certainly going to vary case by case. And so while the Supreme Court has not held with the facts of this particular case that the defendant has a right to a juror who gives truthful answers and takes it from there, we have the clearly established right of Mr. Marcellino to an unbiased jury. And we submit that under the facts of this case, the State court unreasonably interpreted the question and answers during Wadeer and the statements attributed later to Mr. Cronin to be within the rights that Mr. Marcellino enjoyed. Yes. The other statement that was made was, you know, I can guarantee you they're all on probation because otherwise they'd be using guns. The question is, how does that prejudice your client when the only issue in the case was whether some other defendant did the beating, some other, you know, person involved in the fight did the beating, or your client? In other words, the jury's there trying to say, did your client do it or did this other guy do it? And if the juror says, well, you know, all these guys are on probation, how does that affect what's before the jury for decision? I think it affects the jury because it views Mr. Marcellino as a convict, as a person who's ---- And so is the other guy who's ---- the theory of the defense is, well, this other guy did the beating. Correct. He's also a convict, and he's on probation, too. Well, the person that we think did it, Mr. Tejeda, was not on trial. He was a person originally arrested, the person who was identified by several people as the assailant, the person who inflicted the fatal blows. But the theory of the defense, I think, was that he's the one who did it. Yes, sir. And I would assume that the four-person statement would apply to him as much as it would to your defendant. These guys are all on probation. That's why they're not using guns. It possibly could. I see Your Honor's point. But the fact is we had a person who was on trial. There was no 609 or prior conviction evidence introduced against him at all. Yet during deliberations at a point in the case when the defense attorney could not address the issue, nor could the trial court, we had a juror basically telling the other jurors that based upon his experience as a police department employee, these guys must have been on probation. So we have sort of the backdoor of Rule 609 evidence, which we know is extremely prejudicial against defendants. But it was known that he was a police, that he was working with police. He could have been stuck for bias. He could have been subject to preemptive challenge. So the fact that he might have carried more weight with other jurors because of his job was disclosed. I agree that if I was on the case, he would have been my first cut. I would never have left him. You don't know what else was there. That's a good point. That's a good point. Things that occurs to you when you're reading this. Why was he left on a jury? May have been a grim choice. I know. I've been there when the best of the worst is still terrible. But the problem with what happened during the deliberations and the proclamation statement is that there was no evidence at all. It wasn't him using his experience as a police officer or police employee. Depends. The line between what's extraneous and what's really just, you know, personal knowledge. And one reason you have 12 jurors is they're supposed to get a lot of different experiences. And they all look at the case and they can bring some of their common knowledge and experience to the task. And there's not a very distinct line between that and when you're. I mean, it's one thing if somebody brings a newspaper in from outside and shows it around. That's then we know we've got extraneous evidence. But this is it. This is much closer to the borderline of just the background of that.  It's a very blurry, blurry line. I think the Navarro-Garcia case addresses pretty nicely when it's extrinsic, when it's not, when it's allowable, when it's not. I think the key thing in this case is that he was not using his experience as a police department employee to interpret evidence that was already in the record. For instance, a juror using their social experiences to interpret demeanor of a witness. He was using his position with law enforcement to introduce a completely new fact to the jury deliberations, which was this guy's on probation. He's done it before. Therefore, he's done it again. Thank you. May it please the Court. Michael Keller on behalf of the Warden. In this case, the district court properly found the petitioner was not entitled to relief under the AEDPA because the California Court of Appeal reasonably rejected petitioner's allegations that the foreperson concealed bias during jury deliberation, during the jury vortire process and then injected extrinsic evidence during deliberations. Turning first to the allegation of bias. As was read earlier, a lot of ER 53 and 54, I think that that first sentence is sort of a topic sentence or a summary of what is to follow. And you see that Juror Stiles says that an opinion was expressed by the jury foreperson was his dislike for defense attorneys. But then all the rest of that paragraph talks about specific complaints that the foreperson had with regards to Mr. Lass. What if the first sentence had had quotes in it? And it said, Mr. Cohn said, quote, I dislike defense attorneys, unquote. So it's clear that that's what he said. And then he goes on to elaborate with all these other things by saying, look, they lie, they cheat, they steal, they know their clients are guilty and so on. But the first statement is clearly an expression of dislike. If there had been some sort of a quote like that where he had said he disliked all defense attorneys or something of that sort, I think the first thing is because this occurred in deliberations, it could be viewed as a situation where it's come from the frustration, even though he's making a more generalized statement, it could come from the frustration of having sat through what these particular defense attorneys did in this particular case. But secondly, as was stated earlier. I see he started out when he was being questioned, having no view of defense attorneys one way or the other. And by the time he's, how long was the trial? A couple of months? Yes, rather lengthy. By the time he sat through two months of trial, he's had a defense attorney. He says, I don't like defense attorneys. And that could reflect, in your view, that could reflect his experience at trial. Yes, either a change of opinion or probably more likely just a voice of frustration that he may not necessarily mean when he says that. But it's more a reflection of the frustration of sitting through the trial. But it could also be evidence that he always disliked defense lawyers and that when he was asked this question during voir dire, he lied about it. It could be evidence of that. But certainly we don't have anything that approaches that, and there's nothing saying that this is the way I've always felt. At what point do we need an arbitrary hearing to resolve that? Well, I don't think we – Well, something could be construed as being a direct repudiation of an answer given at voir dire. It could also be something else. It could be, as you say, something developed along the way.  But it could also be a simply blowing off the covers and saying, okay, I now admit it. I never liked defense lawyers. At what point do you speculate about it? At what point do you have to stop speculating and do you have to go back and at least examine it factually? Well, there's a couple reasons why you wouldn't need one in this case. Which would be – the first would be that when you look at – throughout the rest of the paragraph, it becomes rather clear when there's numerous references to the defense attorneys as opposed to just saying defense attorneys in general are a blanket. But the second reason is because, as stated earlier, the mere fact that if a juror doesn't like defense attorneys or attorneys in general, as some people don't, then that doesn't make the person a biased juror. And so there really wouldn't be a need to go back and have an evidence jury and find out. But if they are asked a question and they lie about it, then whether or not the subject itself is a necessary disqualifying, the fact that they lie about it makes it more so, doesn't it? In some circumstances, it might. But remember here, this is a very general question. This is, you know, how do you feel about attorneys generally? It doesn't say defense attorneys. And he says no feelings either way. Love them. Love them. You know, I would point out in – that the standard is that Petitioner has the burden of showing that a juror deliberately failed to answer a material question honestly and a truthful answer would have provided a basis to challenge him for cause. And the Petitioner has to further show that the dishonesty manifests a lack of impartiality rather than some sort of confusion or embarrassment. So it might be a bit embarrassing. I think this is – since this was a state court, this was attorney voir dire. Yes. There was – well, the question about how you felt about attorneys, that was actually in, I believe, a juror questionnaire form. A juror questionnaire. Yeah. That they were all provided with. And so it might be a bit embarrassing to say, well, I really don't like attorneys. I tell lots of attorneys this. I don't care about judges either. And so I think that when it comes down to it, there just wasn't enough there to show or to warrant an evidentiary hearing regarding bias. Turning to the second point, the allegation that the foreperson injected extrinsic evidence by speculating that the defendants were on probation as an explanation for their failure to use guns. As Judge Canvey said earlier, even if there was extrinsic evidence introduced in this case, which there wasn't, there wouldn't be any prejudice because just as he was speculating that Petitioner Marcellano might have been on probation, presumably that would have applied to all of the fellow gang members that he was there with that were participating in the fight. But it might be prejudiced in this way, saying, well, maybe we don't have to be quite so careful about figuring out which one of these guys did it. They're all a bunch of bad guys. And since obviously this is a lowlife and a criminal and he's in and out of prison, even if he didn't do this thing, he probably did something else. And so close enough. Close enough for government work. That's how it would work, wouldn't it? That's how the prejudice would work. But to the extent that they were inclined to do that, they already had plenty of ammunition in that regard in the sense that the evidence showed that Petitioner belonged to a violent criminal street gang and that they also found some writing where he said with pride that he and his fellow colonial gang members would attack or kill anyone that entered their neighborhood. So the jury's perception of him isn't going to be changed by the fact that someone speculated he may have been on probation, which is going to suggest that he may have done a crime that, if you get probation, is a less serious crime. So here you have someone who's a member of a violent criminal street gang. He has written down that he would attack and kill people on behalf of his gang. I don't know that it's going to have much impact on a jury to learn that he may also have been on probation. And in this case, it was rather clear that, or the counsel said it was borderline whether it was extrinsic evidence. And certainly there was nothing in this case where the foreperson suggested that he had specific information. And so it's more of him drawing a conclusion based upon his personal experiences. And in that way, this case is analogous to Grotemeyer v. Hickman, where this Court found no Sixth Amendment violation where a physician who sat on a jury referred to her medical expertise in concluding that the defendant was indeed mentally disturbed and that his condition caused him to commit the offense. Okay. Thank you, Mr. Kellogg. Thank you. I think we're about out of time. But we'll give you a minute, Mr. O'Batley, if you should take it. With respect to whether the statements attributed to Mr. Cronin were general or were specific to the case, the government in its own brief acknowledges that they were general. Page 18, the government writes, FS Felicia Stiles asserted the foreperson expressed a distrust of defense attorneys and explained that it was their job to protect guilty people and confuse the jury so that the client could go free. That's not a specific comment concerning the attorneys in that case. It's concerning defense attorneys overall. And the final point I'd like to make is I think there's serious doubt in this case as to whether the proper person is in prison for this offense. There was very, very strong evidence that Mr. Tejeda, the person originally arrested for the offense, was the one who inflicted the fatal blows. Three witnesses originally said he was the one who did it. A fourth witness also implicated him. So I think to the extent that we're concerned about having a potentially innocent person in prison for 25 years of life for a crime he did not commit, I think that may be the case here. So I would submit on that if the Court has no more questions. Tejeda was the big guy, right? Exactly. Thank you. Thank you. The case has been submitted. Our next here argument in Baretto v. Giorbino.
judges: Canby, Kozinski, Rawlinson